**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 19, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EMILE DOUGLAS,

    Defendant - Appellant.

No. 05-5194
(D.C. No. 05-CR-21-TCK)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Emile Melvin Douglas appeals from his conviction, upon a guilty plea, of (1) possession with intent to distribute less than five grams of a substance containing a detectable amount of cocaine base, 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (count I), (2) possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A) (count II); and (3) possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (count III). He was sentenced to imprisonment of 106 months, 46 months concurrently on counts I

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and III followed by a consecutive term of 60 months on count II. He was further sentenced to five years of supervised release and ordered to pay a $1,000 fine. On appeal, he challenges both the district court's denial of his motion to withdraw his plea and the court's earlier denial of his motion to suppress. Our jurisdiction arises under 18 U.S.C. § 1291, and we affirm.

## Background

On November 22, 2004, Tulsa police executed a search warrant at the home of a suspected cocaine dealer at 1417 East Reading Street. As officers approached the home, they observed a man and a woman sitting in the front seat of a purple Cadillac that was parked in the front yard. Officer Kevin Hill approached the Cadillac on the passenger's side and noticed the "fairly strong odor" of burnt marijuana emanating from the partially opened front passenger window. IV R. at 35. Officer Hill identified himself as a Tulsa police officer and instructed the front seat passenger–Mr. Douglas–to put his hands on his head. Rather than doing so, Mr. Douglas leaned forward and reached under the seat. Fearing for his safety, the officer opened the car door while continuing to issue commands to Mr. Douglas. Mr. Douglas began complying with the orders, and Officer Hill removed him from the car and, with the help of Officer Jeff Henderson, handcuffed him.

Officer Hill then examined the area underneath the seat where Mr. Douglas

had appeared to reach a few seconds before. He recovered a marijuana cigarette that was still burning, a loaded .380-caliber semiautomatic handgun, and a bag with rocks of what was later determined to be crack cocaine. Meanwhile, Officer Henderson searched Mr. Douglas, discovering a set of keys. The officers determined that one of the keys unlocked an Oldsmobile that was parked in the driveway of the home. Their subsequent search of that automobile uncovered a digital scale and a .357-caliber revolver.

Following his indictment on February 10, 2005, Mr. Douglas entered a plea of not guilty and moved to suppress the evidence seized during the police raid. The district court held a suppression hearing, ultimately determining both that the officers had probable cause to search the vehicles and that the searches were justified by officer safety concerns. See IV R. at 48-49.

Mr. Douglas then decided to change his plea. On June 21, 2005, he appeared before a magistrate judge. The magistrate judge began by determining that Mr. Douglas was competent. V R. at 3-4. Then, he ascertained that Mr. Douglas had consulted with his attorney and understood the advice he was given and the charges he faced. Id. at 4-5. The magistrate judge obtained a waiver of Mr. Douglas's right to plead guilty before an Article III judge. Id. at 5-6. Next, the magistrate judge explained to Mr. Douglas his constitutional trial rights and informed Mr. Douglas that he would waive those rights by pleading guilty. Id. at 6-7. The magistrate judge then listed the charges against Mr. Douglas, explained

their elements, and informed Mr. Douglas of the sentences that he faced. Id. at 9-12. After agreeing that he understood and wished to waive his trial rights, Mr. Douglas entered guilty pleas to each offense. In the process, the magistrate judge determined that there was a factual basis for the plea based upon Mr. Douglas's statements and admissions to the elements of the offenses. Id. at 14-17.

As part of this proceeding, the magistrate judge specifically asked Mr. Douglas, "Is [sic] your plea of guilty and your waivers of your rights made voluntarily and completely of your own free choice?" Id. at 14. He responded, "Yes." Id. The magistrate judge then asked, "Is [sic] your plea of guilty and your waivers of your rights free of any force, threats or pressure from anyone?" Id. Again, Mr. Douglas replied, "Yes." Id. The magistrate judge concluded that Mr. Douglas was competent and that his pleas were entered freely and voluntarily with full comprehension of their effect. Id. at 18.

On September 14, the district court received a letter from Mr. Douglas which it construed as a pro se motion to withdraw his guilty plea. See I R. Doc. 26. In the letter, Mr. Douglas explained that "[a]t the time of my plea[,] I was under severe stress and anguish while being housed at the David L. Moss Criminal Justice Center." Id. He went on to allege that he had spent the better part of seven months housed in segregation without justification, that he had been assaulted and pepper sprayed while in handcuffs by guards, and that he had been locked in an empty cell wearing only his boxer shorts on two occasions. Id. As a

result of this treatment, Mr. Douglas explained, he had pled guilty because it was "the quickest way to be transferred away from [the Moss] jail. I was suffering tremendously and was not in the right state of mind to enter in to [sic] the plea agreement." Id.

At the sentencing hearing on October 3, the district court questioned Mr. Douglas about his letter. VI R. at 2-6. It then examined the seven factors we have required district courts to consider when deciding whether to allow a defendant to withdraw a guilty plea. Concluding that the weight of the factors was "pretty overwhelming against the defendant in this case," id. at 9, the court denied Mr. Douglas's motion to withdraw his plea, id. at 13. Then, the court sentenced Mr. Douglas to "the very minimum I can give" within the Sentencing Guideline range. Id. at 20.

## Discussion

I.    Withdrawal of the Guilty Plea

On appeal, Mr. Douglas first argues that the district court erred by denying his motion to withdraw his guilty plea. Fed. R. Crim. P. 11(d)(2)(B) provides that a defendant may withdraw his guilty plea after the court accepts the plea but before it imposes sentence if he "can show a fair and just reason for requesting the withdrawal." The defendant bears the burden of establishing a fair and just reason. United States v. Black, 201 F.3d 1296, 1299 (10th Cir. 2000).

Our precedent recognizes seven factors that are relevant in evaluating whether a fair and just reason exists:

> (1) whether the defendant has asserted his innocence; (2) whether the government will be prejudiced if the motion is granted; (3) whether the defendant has delayed in filing the motion; (4) the inconvenience to the court if the motion is granted; (5) the quality of the defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; (7) whether the granting of the motion would cause a waste of judicial resources.

Id. at 1299-1300. We review the question of whether the plea was knowing and voluntary de novo, but we analyze the district court's denial of the motion to withdraw the guilty plea for an abuse of discretion. Id. at 1300.

Of the seven factors, Mr. Douglas challenges only the sixth: that his plea was knowing and voluntary. Ample evidence suggests that Mr. Douglas entered his plea knowingly; i.e., with "a full understanding of what the plea connotes and of its consequence." United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002) (internal quotation marks and citation omitted). Mr. Douglas stated repeatedly that he understood his constitutional trial rights and that, by pleading guilty, he would waive them. He indicated an understanding of the charges against him both when they were explained to him and when he responded. Tellingly, the argument that the plea was unknowing appears nowhere in Mr. Douglas's motion to withdraw his plea, the transcript of the sentencing hearing, or in the briefs. We are satisfied that Mr. Douglas pled guilty with "a full understanding of what the plea connotes and of its consequence." Id.

However, a guilty plea must also "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). Mr. Douglas argues that the conditions of his confinement rendered his plea involuntary. Although he admits that he received no overt pressure to plead guilty, he contends that his plea was motivated by his desire to get out of the Moss Criminal Justice Center as soon as possible.

Assuming, without deciding, that the conditions of an inmate's incarceration could be so severe as to render a plea involuntary, we conclude that Mr. Douglas has failed to establish that the conditions alleged in this case rose to that level and coerced his guilty plea. There is no evidence in the record that Mr. Douglas ever sought administrative remedies or complained about his confinement conditions to correctional officials. He has not alleged any connection between the alleged abuse and his decision to plead guilty; for example, he does not contend that any of the offending guards told him that his situation would improve if he pled guilty. Likewise, Mr. Douglas has not explained why he believed that a guilty plea would hasten his departure from the Moss Criminal Justice Center. As the district court noted, even after his guilty plea, Mr. Douglas remained in that facility for more than three months before his sentencing. VI R. at 4.

Furthermore, Mr. Douglas had ample opportunity to raise these issues

before entering his guilty plea. He did not bring the alleged abuse to the magistrate judge's attention at any point during the plea colloquy. Indeed, he specifically informed the court that his pleas were "voluntary and completely of [his] own free choice" and "free of any force, threats or pressure from anyone." V R. at 14. Mr. Douglas also stated that he was pleading guilty because he was, in fact, guilty. Id. at 15. The magistrate judge, after speaking with Mr. Douglas and observing his demeanor during the hearing, concluded that the plea was voluntary. Id. at 18.

Finally, we note that Mr. Douglas was represented by counsel and, in fact, followed his attorney's advice by pleading guilty. His attorney candidly informed the court at sentencing that, although he was aware of the unusual conditions of Mr. Douglas's confinement at the time the plea was entered, he believed that Mr. Douglas was competent at the time he entered his guilty plea. See VI R. at 10-11. He also stated that he still believed it was in his client's best interest to plead guilty and had continued to advise him as such. Id. at 11.

We conclude that Mr. Douglas's guilty pleas were knowing and voluntary. Because Mr. Douglas had not challenged the district court's findings with respect to the other six Gordon factors, we are satisfied that the court did not abuse its discretion in denying his motion to withdraw his plea.

II.    Suppression

Mr. Douglas also argues that the district court erred by denying his pretrial

motion to suppress the evidence seized from the Cadillac. In <u>Tollett v. Henderson</u>, 411 U.S. 258 (1973), the Supreme Court held that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Id.</u> at 267. In the wake of <u>Tollett</u>, we have recognized that "a voluntary plea of guilty forecloses a defendant's right to object to the manner in which he was arrested or the manner in which the evidence may have been obtained against him." <u>United States v. Nooner</u>, 565 F.2d 633, 634 (10th Cir. 1977); <u>see also</u> <u>United States v. Salazar</u>, 323 F.3d 852, 856 (10th Cir. 2003). Mr. Douglas did not enter a conditional plea of guilty allowing him to appeal the denial of the motion to suppress. <u>See</u> Fed. R. Crim. P. 11(a)(2). Accordingly, having entered an unconditional guilty plea, Mr. Douglas may not challenge the denial of his motion to suppress on appeal. <u>See</u> <u>United States v. Davis</u>, 900 F.2d 1524, 1526-27 (10th Cir. 1990).

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

- 9 -